## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SEAN JUSTIN OWENS,

       Petitioner,

vs.                                   Case No.:    3:22-cv-549-MMH-PDB
                                                    3:18-cr-30-MMH-PDB

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

This cause is before the Court on Petitioner Sean Justin Owens's pro se Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 17; Amended § 2255 Motion)[1] with a memorandum of law (Civ. Doc. 18; Memorandum). Owens is challenging a conviction for possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(e). See Crim. Doc. 36, Jury Verdict. The United States responded in opposition (Civ. Doc. 23; Response), and Owens replied (Civ. Doc. 26; Reply). Owens moved to submit a supplemental claim (Civ. Doc 28; Supplemental Motion); the Court

---

[1] "Civ. Doc. ___" refers to docket entries in this § 2255 case, No. 3:22-cv-549-MMH-PDB. "Crim. Doc. ___" refers to docket entries in Owens's criminal case, No. 3:18-cr-30-MMH-PDB.

granted the Supplemental Motion and directed the United States to respond to the Supplement. The United States filed a supplemental response to the new claim (Civ. Doc. 30; Supplemental Response). Owens filed a supplemental reply (Civ. Doc. 31; Supplemental Reply). Thus, the case is ripe for decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings,[2] the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. No evidentiary hearing is required because Owens's allegations are affirmatively contradicted by the record, patently frivolous, or even assuming the facts he alleges are true, he is still not entitled to relief. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

## I. Background

While on patrol, officers of the Jacksonville Sheriff's Office observed Owens illegally park a vehicle on a neighborhood street, exit the vehicle, and

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

enter a house.[4] See Crim. Doc. 67, Trial Transcript, Volume I (Trial Tr. Vol. I) at 107–08. When Owens did not return to the vehicle, officers ran the tag number and discovered that the tag was not registered to the vehicle. See id. at 108. An officer approached the driver's side window and observed a handgun sitting in the center console. See id. at 110. Officers then conducted an inventory search of the vehicle, during which they located Owens's driver's license on the floor of the vehicle. See id. at 112. Officers soon determined that at that time, Owens was a convicted felon. See id. at 130. Owens's cousin later exited the house and inquired about the officer's presence. See id. at 110. The cousin attempted to locate Owens but discovered he had run out of the house. See id. at 125. A few hours later, Owens returned to the scene and officers arrested him. See id. at 112.

In 2018, a federal grand jury indicted Owens with one count of possession of a firearm by a convicted felon, in violation of §§ 922(g)(1) and 924(e). See Crim. Doc. 1, Indictment. Owens proceeded to trial where he stipulated that he had felony convictions, and thus he was prohibited from possessing a firearm. See Crim. Doc. 29-1, Stipulation. On November 15, 2018, a jury found him guilty of the charged offense. See Jury Verdict.

---

[4] These facts derive from the trial testimony of Officer Shawn Wolford.

The United States Probation Office determined that Owens qualified as an "armed career criminal" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), because he had three prior state (Florida) felony convictions involving the sale or delivery of cocaine that he obtained in 2009.[5] See Crim. Doc. 39, Presentence Investigation Report (PSR) ¶ 18. Based on Owens's total offense level (34) and criminal history category (VI), his advisory guidelines range at sentencing was between 262 and 327 months imprisonment. See id. ¶¶ 21, 38, 68. Owens did not object to the PSR. See id., PSR Addendum.

During the sentencing hearing, the then-assigned judge, the Honorable Henry L. Adams, United States District Judge, adopted the PSR without objection. See Crim. Doc. 58, Sentencing Transcript at 6–8. To support its request for a sentencing enhancement, the United States provided the court with Shepard[6] documents to establish Owens's prior convictions. See id. at 9; see also Crim. Docs. 41-2, 41-3. Defense counsel requested that the Court impose a 180-month sentence based on Owens's history. See id. at 10–16. And the Court ultimately sentenced Owens to 180-months term of imprisonment. See Crim. Doc. 42, Judgment.

---

[5] The ACCA imposes an enhanced sentence of 15 years to life in prison for those convicted of being a felon in possession of a firearm and who have three or more prior convictions for a "violent felony" or a "serious drug offense," or both, committed on occasions different from one another. 18 U.S.C. § 924(e)(1).

[6] Shepard v. United States, 544 U.S. 13 (2005).

Owens appealed, arguing that: (1) the United States failed to prove that he knew he was a felon at the time of the offense; (2) § 922(g) is unconstitutional; (3) convictions under Florida Statutes, section 893.13, did not qualify as "serious drug offenses" under the ACCA or "controlled substance offenses" under the guidelines; (4) his ACCA predicate offenses did not occur on different occasions; and (5) his sentence violated his rights under the Fifth and Sixth Amendments. See United States v. Owens, 808 F. App'x. 917, 918 (11th Cir. 2020). The Eleventh Circuit rejected Owens's arguments and affirmed his conviction and sentence. See id.

Now, Owens seeks to vacate his conviction under 28 U.S.C. § 2255. In his Amended § 2255 Motion, Owens asserts that counsel was ineffective when he failed to: (a) investigate the background of the handgun involved in the offense, (b) move to dismiss the Indictment based on insufficient evidence, and (c) object to the jury instructions (Ground One). See Amended § 2255 Motion at 13–14; see also Memorandum at 1–3. He also contends that the court made comments to a juror that improperly rushed the proceedings and affected his right to a fair trial (Ground Two), and that his ACCA enhancement is invalid in light of the

holdings in <u>Wooden</u>[7] (Ground Three) and <u>Jackson II</u>[8] (Ground Four). <u>See</u> <u>id.</u> at 14–18; <u>see also</u> Memorandum at 3–8. As a supplemental claim for relief, Owens argues that his conviction is invalid considering the holding in <u>Erlinger</u>[9] (Ground Five). <u>See</u> Supplemental Motion. The United States does not challenge the timeliness or cognizability of Owens's claims, but it argues that the claims are procedurally barred and meritless. <u>See</u> Response at 4 –5; Supplemental Response at 5–6.

## II. Governing Law

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. <u>United</u>

---

[7] <u>Wooden v. United States</u>, 595 U.S. 360 (2022).

[8] <u>United States v. Jackson (Jackson I)</u>, 36 F.4th 1294 (11th Cir. 2022), <u>superseded by</u> <u>United States v. Jackson (Jackson II)</u>, 55 F.4th 846 (11th Cir. 2022), <u>aff'd sub nom.</u> <u>Brown v. United States</u>, 602 U.S. 101 (2024).

[9] <u>Erlinger v. United States</u>, 602 U.S. 821 (2024).

States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court recognizes that a petitioner's claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster

7

v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. But because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman, 871 F.3d 1215, 1221–22 (11th Cir. 2017). Moreover, a § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation omitted).

## III. Discussion

### A. Ground One[10]

As Ground One, Owens argues that counsel was ineffective when he failed to: (a) investigate the background of the handgun involved in the offense; (b) move to dismiss the Indictment based on insufficient evidence; and (c) object to the jury instructions. See Amended § 2255 Motion at 4, 13–14; see also Memorandum at 1–3.

### Subclaims (a) & (b)—Failure to investigate and move to dismiss

Owens argues that trial counsel was ineffective when he failed to "hire a forensics expert" to investigate the handgun's ownership or the circumstances of the offense. See Amended § 2255 Motion at 13. He also alleges that counsel should have moved to dismiss the Indictment based on insufficient evidence. See id. at 14.

The Court turns first to subclaim (a). "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir.

---

[10] In its Response, the United States identifies Owens's claims as Ground One (subclaims a through c), Ground Four, Ground Five, and Ground Six. See Response at 9–19. Owens adopts this numbering in his Reply. See Reply at 3. Given the parties' agreement, the Court will number Owens's claims in the same manner.

1978).[11] Indeed, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

Here, Owens neither specifically identifies a helpful forensics witness, nor provides an affidavit or proffer of testimony that any such unnamed witness would have provided during trial. Owens offers no evidence that even if the unidentified witness had testified, the testimony provided would have affected the outcome of trial, and thus he fails to demonstrate prejudice under Strickland. Because "self-serving speculation" that the witnesses' testimony would have been favorable "will not sustain an ineffective assistance claim," Ashimi, 932 F.2d at 650, Owens is not entitled to relief on the claim in subclaim (a).

As to subclaim (b), the Eleventh Circuit has held that a motion for acquittal under Rule 29, Federal Rules of Criminal Procedure (Rule(s)), is the proper method for contesting the sufficiency of evidence in a criminal case

---

[11] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

because the Rules provide no explicit authority to grant a pretrial motion to dismiss contesting the sufficiency of the evidence. See <u>United States v. Salman</u>, 378 F.3d 1266, 1268 (11th Cir. 2004) (per curiam). Therefore, if trial counsel had filed any such pretrial motion, it would have been without merit. Counsel was not deficient when he failed to file a meritless motion.[12] See <u>Freeman v. Att'y Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). And Owens was not prejudiced by that failure. See <u>United States v. Winfield,</u> 960 F.2d 970, 974 (11th Cir. 1992) (per curiam) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client."). Accordingly, relief on subclaims (a) and (b) of Ground One is due to be denied.

### <u>Subclaim (c)—Failure to object to the jury instructions</u>

Owens argues that his trial counsel was ineffective when he failed to object to the jury instructions because the instructions did not require the jury to determine whether his prior Florida convictions occurred on different occasions. See <u>Amended §2255 Motion at 14; see also</u> Memorandum at 2–3. At the time of Owens's trial, the Eleventh Circuit had determined that the ACCA's different-occasions determination need not be submitted to a jury and proven

---

[12] Notably, counsel moved for acquittal after the close of all evidence at trial, and the Court denied the motion. See <u>Crim. Doc. 63, Trial Transcript, Volume II at 3–4.

beyond a reasonable doubt. See United States v. Weeks, 711 F.3d 1255, 1259 (11th Cir. 2013), abrogated on other grounds by Descamps v. United States, 570 U.S. 254 (2013). Rather, for ACCA purposes, a district court could consider Shepard documents to determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions. See id. However, in 2024, four years after Owens's conviction and sentence were affirmed on direct appeal, the United States Supreme Court issued its opinion in Erlinger, holding that, in compliance with Apprendi v. New Jersey, 530 U.S. 466 (2000), the Fifth and Sixth Amendments require a jury, not a judge, to determine whether a defendant's predicate offenses under ACCA were committed on separate occasions. Erlinger, 602 U.S. at 834–35.

Here, under Eleventh Circuit precedent at the time of Owens's trial, the jury was not required to make a different-occasions determination. and thus the Court's use of the standard jury instructions at that time, which omitted any such direction, was proper. As such, any objection on that basis would have been meritless. And, likely of more import, "reasonably effective representation does not include a requirement that trial counsel make arguments or objections based on predictions as to how the law may develop." Denson v. United States, 804 F.3d 1339, 1343 (11th Cir. 2015) (per curiam). Therefore, trial counsel was neither deficient for failing to object to the instructions on the basis that Owens

proposes, see Freeman, 536 F.3d at 1233, nor did counsel's alleged failure affect the outcome of Owens's case, see Winfield, 960 F.2d at 974. Based on the above, relief on subclaim (c) of Ground One is due to be denied.

## B. Ground Two

In Ground Two, Owens argues that the Court's comments to a juror violated his right to a fair trial. See Amended § 2255 Motion at 14–15; see also Memorandum at 3–4. Specifically, he alleges that the Court promised to get a juror "out of here" before the week ended so that the juror could attend a personal event and reiterated that promise throughout the trial. Id. at 15. According to Owens, the comments gave "everyone the impression that the trial should speed up." Id. Owens did not raise this claim on direct appeal.

Relevant to this claim, "[c]ourts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (per curiam). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal," including constitutional claims, "or else the defendant is barred from presenting that claim in a § 2255 proceeding." Id. at 1234. "A defendant can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule." Id. The first is the cause-and-prejudice exception, under which "a § 2255 movant can avoid application of the procedural default

bar by 'show[ing] cause for not raising the claim of error on direct appeal <u>and</u> actual prejudice from the alleged error.'" <u>McKay v. United States</u>, 657 F.3d 1190, 1196 (11th Cir. 2011) (quoting <u>Lynn</u>, 365 F.3d at 1234). The second exception is actual innocence, under which "a movant's procedural default is excused if he can show that he is actually innocent either of the crime of conviction or, in the capital sentencing context, of the sentence itself." <u>Id.</u> at 1196. "To show actual innocence of the crime of conviction, a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of the new evidence of innocence." <u>Id.</u> (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

Because Owens failed to raise this claim on direct appeal, it is procedurally defaulted unless he can demonstrate either cause and prejudice or actual innocence. As cause to excuse his default, Owens makes a conclusory allegation that appellate counsel was ineffective when he failed to raise the claim on direct appeal. <u>See</u> Amended § 2255 Motion at 6. "Constitutionally ineffective assistance of counsel can constitute cause . . . . In order to do so, however, the claim of ineffective assistance must have merit." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (internal citation omitted). Therefore, the Court will consider the merits of Owens's ineffectiveness claim.

The record shows that before jury selection, which occurred on a Wednesday, the United States informed the Court that the trial would not last

longer "than about a day and a half." Trial Tr. Vol. I at 4. Counsel agreed. <u>See</u> <u>id.</u> Then, before the announcement of the jury, both parties confirmed that the trial would not last until Friday. <u>See</u> <u>id.</u> at 83–84. The United States rested its case at the close of the first day of trial. <u>See</u> <u>id.</u> at 168. Considering both parties' assessment of the length of trial, Owens fails to show how the Court strayed from neutrality when it informed a juror that the trial would finish before the end of the week. <u>See</u> <u>Moore v. United States</u>, 598 F.2d 439, 442 (5th Cir. 1979) (noting that a court denies a defendant his right to a fair trial when the court's conduct "strays from neutrality."). Because Owens's claim is without merit, counsel was not deficient when he failed to raise the issue on direct appeal. For that same reason, he cannot demonstrate prejudice because the claim would not have succeeded on appeal. Accordingly, Owens can demonstrate neither cause nor prejudice to excuse his procedural default.

Owens also fails to show that he can overcome the default under the actual innocence exception. He does not point to any new evidence of innocence in the light of which, more likely than not, no reasonable juror would have found him guilty beyond a reasonable doubt. <u>See</u> <u>McKay</u>, 657 F.3d at 1196. Because Owens cannot overcome the procedural bar of his claim, relief on the claim in Ground Two is due to be denied.

## C. Ground Three

Owens asserts that his prior convictions under Florida Statutes, section

893.13, do not support his ACCA enhancement because they did not occur on different occasions. <u>See</u> Amended § 2255 Motion at 15–16; <u>see also</u> Memorandum at 4–5. To support his claim for relief, he relies on <u>Wooden</u> in which the Supreme Court reversed the Sixth Circuit's affirmance of a defendant's ACCA sentence based on ten prior burglary convictions. 595 U.S. at 376. The burglary convictions resulted from breaking into ten storage units inside the same building, one right after the other, on the same evening. <u>Id.</u> at 363. In its opinion, the Supreme Court rejected the Sixth Circuit's holding that the ACCA's different-occasions provision was satisfied whenever crimes occurred sequentially instead of simultaneously. <u>Id.</u> at 365. Rather, the Supreme Court held that an inquiry into whether prior offenses occurred on separate occasions is multi-factored and requires considering the timing, location, character, and relationship of the offenses. <u>Id.</u> at 369. It noted "[i]n many cases, a single factor—especially of time or place—can decisively differentiate occasions. Courts, for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" <u>Id.</u> at 369–70 (quoting <u>United States v. Rideout</u>, 3 F.3d 32 (2d Cir. 1993)).

Owens's prior convictions occurred on different occasions. Indeed, the charging documents show that the crimes of conviction were temporally distinct because he sold cocaine on March 13, 2009; March 17, 2009; and March 20,

2009. <u>See</u> Crim. Doc. 41-2. Therefore, <u>Wooden</u> does not afford Owens any relief,[13] and relief on the claim in Ground Three is denied.

### D. Ground Four

Owens alleges his ACCA sentencing enhancement is invalid in light of <u>Jackson II</u> because his prior convictions under section 893.13 of the Florida Statutes do not qualify as controlled substance offenses. <u>See</u> Amended § 2255 Motion at 17–18; <u>see also</u> Memorandum at 6–8. Owens raised a substantially similar claim on direct appeal. The Eleventh Circuit denied relief, stating in pertinent part:

> The district court did not plainly err because Owens's argument is foreclosed by our precedent as well as a recent decision by the Supreme Court. In <u>United States v. Smith</u>, we explicitly held that a conviction under Fla. Stat. § 893.13(1) qualifies as a "serious drug offense" under ACCA and a "controlled substance offense" under U.S.S.G. § 4B1.2(b). 775 F.3d 1262, 1266–68 (11th Cir. 2014). The Supreme Court recently affirmed one of our decisions relying on <u>Smith</u>. <u>See</u> <u>Shular v. United States</u>, [589] U.S. [154], 140 S. Ct. 779, 206

---

[13] Owens mistakenly relies on <u>United States v. Lewis</u>, 833 F. App'x 261 (11th Cir. 2020), <u>cert. granted</u>, <u>judgment vacated</u>, 142 S. Ct. 1439 (2022). <u>See</u> Amended § 2255 Motion at 15–16. Although the Supreme Court granted Lewis's petition, vacated the judgment, and remanded for further consideration in light of <u>Wooden</u>, that does not convey the Supreme Court's view on the merits. <u>See</u> <u>Tyler v. Cain</u>, 533 U.S. 656, 666 n.6 (2001) (noting that while an order granting certiorari, vacating, and remanding may indicate "a 'reasonable probability' that the Court of Appeals would reject a legal premise on which it relied and which may affect the outcome of litigation" it does not amount to a final determination on the merits). Owens's speculation that the result in <u>Lewis</u> on remand will be different and ultimately affect his case does not warrant relief under § 2255. Indeed, the Eleventh Circuit recently affirmed Lewis's conviction and sentence on remand. <u>See</u> <u>United States v. Lewis</u>, No. 19-15076, 2025 WL 2427152, at *5 (11th Cir. Aug. 22, 2025).

> L.Ed.2d 81 (2020). Because Smith controls this case, we
> reject Owens's argument on this point.

Owens, 808 F. App'x at 921.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. [O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (internal citations and quotation marks omitted). Because the Eleventh Circuit has already rejected Owens's argument, the claim in Ground Four is procedurally barred and due to be denied.

Even if the claim were not procedurally barred, it is still without merit. To determine whether Owens's three Florida convictions for the sale of cocaine in 2009 met the ACCA's definition of a "serious drug offense," the Court uses the "categorical approach." United States v. Conage, 976 F.3d 1244, 1250 (11th Cir. 2020). Under that approach, the Court looks to the state offense of which the defendant was convicted and identifies the elements of that crime. See id. The categorical approach requires the Court to ignore the facts of the prior conviction and consider only the elements. See id. The Court then compares the elements of the state offense with the components of the ACCA's definition of a "serious drug offense." Id. A conviction is a "serious drug offense" only if the state statute under which the defendant was convicted defines the offense as

narrowly as (or more narrowly than) the ACCA's definition of a "serious drug offense." Id.

As relevant here, the ACCA defines "serious drug offense" to mean "an offense under State law, involving . . . distributing, or possessing with intent to . . . distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). This definition requires a state crime to meet three criteria:

> First, the prior state offense must involve certain conduct: "manufacturing, distributing, or possessing with intent to manufacture or distribute." Second, that conduct must involve "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802))." And third, that conduct involving a controlled substance must be punishable by a maximum term of imprisonment of at least ten years.

Jackson II, 55 F.4th at 854 (internal citations omitted). Owens's claim focuses on the second component, which requires that "an offense under State law" is a serious drug offense only if it involves a controlled substance "as defined in section 102 of the Controlled Substances Act [CSA]." Id.

The federal CSA schedules change frequently, with substances being added and removed regularly. So, in Jackson II, the Eleventh Circuit had to determine which version of the federal CSA schedules governs the determination of whether a prior state drug conviction was an ACCA-qualifying

offense: the version in effect when the defendant was convicted of the prior state offense or the version in effect when he committed his federal firearm offense. 55 F.4th at 849. Relevant to Jackson II, the United States Attorney General removed ioflupane (a cocaine analogue) from the federal CSA schedules in September 2015. Id. at 851 & n.4. The defendant, Eugene Jackson, had been convicted of cocaine-related offenses under Florida Statutes, section 893.13(1)(a), in 1998 and 2004, when ioflupane was a controlled substance under both Florida and federal law, but he committed the federal firearm offense in 2017, after ioflupane had been removed from the federal CSA schedules. See id. at 850–51 & nn.3–4. The Eleventh Circuit held that the "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense." Id. at 849.

Here, the crucial fact is that Owens was convicted of his ACCA-qualifying drug offenses involving the sale of cocaine in 2009. See Crim. Doc. 41-2. At that time, ioflupane was a controlled substance under both Florida law and the federal CSA schedules. As a result, when Owens was convicted of the prior drug offenses in 2009, they categorically involved a substance listed in the federal CSA. Indeed, at that time, Florida law made it "unlawful for any person to sell, manufacture, or deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance." Fla. Stat. § 893.13(1)(a). If the offense involved a

substance listed in section 893.03(2)(a), the offense was a second-degree felony, id. § 893.13(1)(a)1, punishable by a term of imprisonment not exceeding 15 years, id. § 775.082(3)(d). Schedule II of Florida's Controlled Substance Schedules listed "[c]ocaine or ecgonine, including any of their stereoisomers, and any salt, compound, derivative, or preparation of cocaine or ecgonine." Id. § 893.03(2)(a)4. That description included ioflupane. Jackson II, 55 F.4th at 851 n.3. Because different formulations of the same substance (e.g., cocaine versus ecgonine) are only "alternative means" of committing the same crime under Florida law, a court must presume that the offense involved only the least culpable formulation. See id. at 861 n.9. Accordingly, in Owens's case, the Court presumes that his 2009 convictions for sale of cocaine involved ioflupane.

But as noted above, the Attorney General did not remove ioflupane from the federal CSA schedules until 2015. Owens was convicted in 2009. See Crim. Doc. 41-3. And the Eleventh Circuit held in Jackson II that the version of the federal CSA schedules in effect when the defendant was convicted of his prior state drug offense governs. 55 F.4th at 849. When Owens was convicted of the prior state drug offenses, Schedule II of the federal CSA schedules included:

> (4) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed; cocaine, its salts, optical and geometric isomers, and salts of isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any compound, mixture, or preparation which contains any quantity of any of the

substances referred to in this paragraph.

21 U.S.C. § 812(c), Schedule II(a)(4). In 2009, "'ioflupane was, by definition, a schedule II controlled substance because it is derived from cocaine via ecgonine, both of which are schedule II controlled substances.'" Jackson II, 55 F.4th at 851 n.4 (quoting 80 Fed. Reg. 54715). Because the federal CSA schedules still included ioflupane when Owens was convicted of sale of cocaine in 2009, that crime categorically involved "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." 18 U.S.C. § 924(e)(2)(A)(ii). And Owens identifies no other substance that his prior cocaine convictions could have involved that was not included in the 2009 version of CSA's Schedule II-substances. Nor does Owens contest whether his prior cocaine convictions satisfied the other two components of a "serious drug offense," i.e., that they involved distributing or possessing with intent to distribute and that the offenses were punishable by more than 10 years in prison. See 18 U.S.C. § 924(e)(2)(A)(ii). As a result, Owens's 2009 convictions for the sale of cocaine properly qualified as ACCA "serious drug offenses."

Insofar as Owens alleges "[d]ue process demands that [he] was required to receive proper notice of the [ACCA] statutory penalties he could face upon his conviction," his claim is without merit.[14] Amended § 2255 Motion at 18. The

---

[14] For purposes of its analysis, the Court assumes Owens's claim is not procedurally barred.

Indictment provided notice of the United States's intent to seek enhanced penalties under the ACCA. <u>See</u> Indictment at 2 (citing § 924(e)). It also listed five of Owens's prior Florida convictions as bases for an ACCA enhancement. <u>See</u> <u>id.</u> at 1–2. Following a jury trial, Owens had the opportunity to object to the PSR, <u>see</u> PSR Addendum, and present evidence at a sentencing hearing, <u>see</u> Sentencing Transcript.

To the extent Owens alleges trial counsel was ineffective when he failed to inform Owens of the ACCA enhancement, he is still not entitled to relief. Owens speculates that he would have "sought a plea deal" if he had known about the ACCA enhancement. Amended § 2255 at 18. However, he does not allege that he would have accepted a plea agreement of guilty or entered a plea and would not have insisted on going to trial. Merely alleging that he would have sought a plea deal is insufficient to show that the result of the proceedings would have concluded differently had he done so. <u>See</u> <u>Rosin</u>, 786 F.3d at 878.

Indeed, the record also supports a contrary conclusion. During the sentencing hearing, counsel noted that because of the ACCA enhancement, the defense had intended to stipulate to the facts and waive a trial; however, at the "last moment," Owens insisted on proceeding to a trial. <u>See</u> Sentencing Transcript at 12. Counsel noted he had advised Owens to waive a trial. <u>See</u> <u>id.</u> at 13. Considering this evidence, Owens was clearly aware of the ACCA enhancement he faced but his insistence on going to trial showed that there was

no reasonable probability that he would have accepted a plea deal even if the United States extended an offer to him. Accordingly, Owens is not entitled to relief on the claim in Ground Four and it is due to be denied.[15]

### E. Ground Five

In his supplemental claim, Owens argues that his ACCA sentencing enhancement is invalid in light of the new rule announced in <u>Erlinger</u>. <u>See</u> Supplemental Motion. A newly recognized right applies retroactively on collateral review only in limited circumstances. <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351 (2004). New substantive rules generally apply retroactively, <u>see</u> <u>id.</u>, whereas new procedural rules do not, <u>see</u> <u>Edwards v. Vannoy</u>, 593 U.S. 255, 272 (2021).

To determine if <u>Erlinger</u> applies retroactively on collateral appeal, the Court applies the test set forth in <u>Teague v. Lane</u>, 489 U.S. 288, 301 (1989). First, the Court must determine whether <u>Erlinger</u> announced a new rule. Second, the Court must "determine whether that new rule satisfies an exception to the general prohibition against the retroactive application of new rules on collateral review." <u>Figuereo-Sanchez v. United States</u>, 678 F. 3d 1203, 1208 (11th Cir. 2012).

---

[15] In Ground Four, Owens also seemingly alleges that a jury should have determined his ACCA enhancement. Insofar as he asserts the jury should have determined the different-occasions requirement, he is not entitled to relief for the reasons stated in Ground Five.

*Teague* recognizes two exceptions to the general prohibition: (1) new substantive rules and (2) watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. 489 U.S. at 311–12. Substantive rules are "rules forbidding criminal punishment of certain primary conduct" and "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Montgomery v. Louisiana*, 577 U.S. 190, 198 (2016). The "watershed" exception is extraordinarily rare, and post-*Teague*, the Supreme Court has rejected every claim that a new procedural rule qualifies as a watershed exception. *Edwards*, 593 U.S. at 267–68.

*Erlinger* announced a new rule that a jury must determine whether a defendant's predicate offenses under ACCA were "committed on occasions different from one another." 602 U.S. at 834–35. However, the new rule does not fall under either of *Teague*'s exceptions. *Erlinger* neither narrowed the scope of a criminal statute nor placed particular conduct or persons beyond its reach. Rather, *Erlinger* altered only "the manner of determining the defendant's culpability." *Vannoy*, 593 U.S. at 276 (quotations omitted). Such a procedural rule does "not apply retroactively on federal collateral review." *Id.*; *see Schriro*, 542 U.S. at 353 (finding that decisions requiring that a factual determination be made by a jury "are prototypical procedural rules"). And it does not appear that *Erlinger* is a watershed rule of criminal procedure. Therefore, because the

25

procedural rule announced in <u>Erlinger</u> is not retroactive on collateral review, Owens is not entitled to relief on this supplemental claim in Ground Five and it is due to be denied.

## IV. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Owens "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335–36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

When a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct

in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now **ORDERED:**

1.    Petitioner Sean Justin Owens's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 17) and supplemental claim (Civ. Doc. 28) are **DENIED**.

2.    The Clerk is directed to enter judgment for the United States and against Owens, and close the file.

3.    If Owens appeals this Order, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is unwarranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of September, 2025.

MARCIA MORALES HOWARD
United States District Judge

Jax-9 9/16
c:    Counsel of record
       Petitioner

27